## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| ERNIE HARBAUM, Individually and For Others Similarly Situated,<br><br>  Plaintiff,<br><br>v.<br><br>TRANSCANADA USA SERVICES INC.,<br><br>  Defendant. | Case No. 2:19 cv-844<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Ernie Harbaum (Harbaum) brings this lawsuit to recover unpaid overtime wages and other damages from TransCanada USA Services, Inc. (TransCanada) under the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 201 *et seq*.

2. Harbaum worked for TransCanada as an Inspector.

3. Harbaum and the Putative Class Members (as defined below) regularly worked more than 40 hours a week.

4. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

5. Instead of receiving overtime as required by the FLSA, these workers received a flat amount for each day worked (a "day rate") without overtime compensation.

6. Harbaum or the Putative Class Members never received a guaranteed salary.

7. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

10. Harbaum worked for TransCanada in this District and Division.

11. Specifically, Harbaum worked for TransCanada in and around Charleston, West Virginia. Indeed, Harbaum regularly worked overtime for TransCanada in and around Charleston, West Virginia. Despite regularly working over 40 hours, TransCanada paid him a day rate with no overtime for the work he did for TransCanada in and around Charleston, West Virginia.

## PARTIES

12. Harbaum worked for TransCanada as an Inspector from approximately October 2017 until June 2018.

13. Throughout his employment with TransCanada, Harbaum was paid a day rate with no overtime compensation.

14. Harbaum's written consent is attached as Exhibit A.

15. Harbaum brings this action on behalf of himself and all other similarly situated workers who were paid by TransCanada's day rate system.

16. Each of these workers received a flat amount for each day worked and did not receive overtime for hours worked in excess of 40 in a workweek in accordance with the FLSA.

17. The collective of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All workers employed by, or working on behalf of TransCanada, who were paid a day rate with no overtime at any time during the past 3 years (Putative Class Members).**

18. The Putative Class Members are easily ascertainable from TransCanada's business and personnel records.

19. Defendant TransCanada is a Canadian corporation that maintains its United States headquarters in Houston, Texas. TransCanada may be served with process by serving its registered agent: **Corporation Service Company, 209 West Washington Street, Charleston, West Virginia 25302**.

## COVERAGE UNDER THE FLSA

20. At all relevant times, TransCanada has been an employer within the meaning of the Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

21. At all relevant times, TransCanada has been an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

22. At all relevant times, TransCanada has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1). TransCanada has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

23. In each of the last 3 years, TransCanada has had annual gross volume of sales made or business done of at least $1,000,000.

24. At all relevant times, Harbaum and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

25. TransCanada's uniform day rate scheme, depriving its employees of overtime compensation for weeks in which these workers work over 40 hours is, in and of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

26. TransCanada is one of "the leading energy infrastructure company[ies] in North America, focusing on pipeline and power generation opportunities[.]"[1]

27. To complete its business objectives, TransCanada hires personnel, such as Harbaum, to perform inspection services.

28. Many of these individuals worked for TransCanada on a day rate basis (without overtime pay).

29. These workers make up the proposed Putative Class.

30. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

31. For example, Harbaum worked for TransCanada as an Inspector from approximately October 2017 until June 2018 in and around Charleston, West Virginia.

32. As an Inspector, Harbaum's primary job duties included inspecting and handling material supplies for equipment installs.

33. Harbaum did not have any supervisory duties.

34. Harbaum did not hire or fire employees.

35. Harbaum did not exercise discretion and judgment as to matters of significant.

36. To the contrary, Harbaum worked with his hands.

37. Harbaum performed manual labor.

38. Harbaum worked in the elements.

39. Harbaum does not work in an office.

40. Harbaum does not manage a business unit.

---

[1] https://www.tcenergy.com/globalassets/pdfs/media/fact-sheets/tc-our-business-at-a-glance.pdf (last visited November 1, 2019).

41. Harbaum was a blue-collar worker.

42. Throughout his employment with TransCanada, he was paid on a day rate basis.

43. Specifically, Harbaum received a day rate of approximately $431/day.

44. Harbaum and the Putative Class Members work for TransCanada under its day rate pay scheme.

45. Harbaum and the Putative Class Members do not receive a salary.

46. If Harbaum and the Putative Class Members did not work, they did not get paid.

47. Harbaum and the Putative Class Members receive a day rate.

48. Harbaum and the Putative Class Members do not receive overtime pay.

49. This is despite the fact that Harbaum and the Putative Class Members typically work at least 10 hours a day, for as many as 6 days a week, for weeks at a time.

50. Although Harbaum typically worked 6 days a week, for at least 10 hours a day, he did not receive any overtime pay.

51. Harbaum and the Putative Class Members received the day rate regardless of the number of hours they worked, and even if they worked more than 40 hours in a workweek.

52. Harbaum and the Putative Class Members must follow TransCanada and/or its clients' policies and procedures.

53. Harbaum and the Putative Class Members' work must adhere to the quality standards put in place by TransCanada and/or its clients.

54. At all relevant times, TransCanada and/or its clients maintained control, oversight, and direction of Harbaum and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

55. Harbaum's work schedule is typical of the Putative Class Members.

56. TransCanada controls Harbaum and the Putative Class Members' pay.

57. Likewise, TransCanada and/or its clients' control Harbaum and the Putative Class Members' work.

58. Harbaum and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

59. TransCanada knows Harbaum and the Putative Class Members work for 10 or more hours a day, for as many as 6 days a week.

60. TransCanada's records reflect the fact that Harbaum and the Putative Class Members regularly work far in excess of 40 hours in certain workweeks.

61. Harbaum and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

62. Instead, Harbaum and the Putative Class Members are paid on a day rate basis.

63. TransCanada and/or its clients set these workers' schedules and compensation; supervises them; requires them to adhere to strict guidelines, directive, and its (or its clients') policies and procedures.

64. While working for TransCanada, TransCanada controlled all the significant or meaningful aspects of the job duties Harbaum and the Putative Class Members perform.

65. TransCanada exercises control over the hours and locations Harbaum and the Putative Class Members work, the tools and equipment they use, and the rates of pay they receive.

66. Even though Harbaum and the Putative Class Members work away from TransCanada's offices without the constant presence of TransCanada supervisors, TransCanada still controls significant aspects of their job activities by enforcing mandatory compliance with its (or its clients') policies and procedures.

67. Very little skill, training, or initiative is required of Harbaum and the Putative Class Members to perform their job duties.

68. Indeed, the daily and weekly activities of Harbaum and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by TransCanada.

69. TransCanada prohibits Harbaum and the Putative Class Members from varying their job duties outside of the predetermined parameters and requires Harbaum and the Putative Class Members to follow TransCanada's (or its clients') policies, procedures, and directives.

70. Harbaum and the Putative Class Members perform routine job duties largely dictated by TransCanada (or its clients).

71. All of the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

72. All of the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

73. All of the Putative Class Members work in excess of 40 hours each week.

74. TransCanada uniformly denies Harbaum and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

75. Harbaum and the Putative Class Members are not employed on a salary basis.

76. Harbaum and the Putative Class Members do not, and have never, received guaranteed weekly compensation irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

77. TransCanada's day rate policy violates the FLSA because it deprives Harbaum and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

78. TransCanada knew Harbaum and the Putative Class Members worked more than 40 hours in a week.

79. TransCanada knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA's overtime provisions.

80. Nonetheless, Harbaum and the Putative Class Members were not paid overtime.

81. TransCanada knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

### COLLECTIVE ACTION ALLEGATIONS

82. Harbaum brings this claim as a collective action under the FLSA.

83. The Putative Class Members were victimized by TransCanada's pattern, practice, and/or policy which is in willful violation of the FLSA.

84. Other Putative Class Members worked with Harbaum and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

85. Based on his experiences with TransCanada, Harbaum is aware that TransCanada's illegal practices were imposed on the Putative Class Members.

86. The Putative Class Members are similarly situated in all relevant respects.

87. The Putative Class Members are blue-collar workers.

88. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

89. The illegal day rate policy that TransCanada imposes on Harbaum is likewise imposed on all Putative Class Members.

90. Numerous individuals are victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

91. The Putative Class Members are similarly denied overtime when they work more than 40 hours per week.

92. The overtime owed to Harbaum and the Putative Class Members will be calculated using the same records and using the same formula.

93. Harbaum's experiences are therefore typical of the experiences of the Putative Class Members.

94. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

95. Harbaum has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

96. Like each Putative Class Member, Harbaum has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

97. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

98. Absent a collective action, many Putative Class Members will not obtain redress of their injuries and TransCanada will reap the unjust benefits of violating the FLSA.

99. Further, even if some of the Putative Class Members could afford individual litigation against TransCanada, it would be unduly burdensome to the judicial system.

100. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

101. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

102. Among the common questions of law and fact are:

   a. Whether TransCanada's decision to pay a day rate with no overtime compensation to these workers was made in good faith;

   b. Whether TransCanada's violation of the FLSA was willful; and

   c. Whether TransCanada's illegal pay practice applied to the Putative Class Members.

103. Harbaum and the Putative Class Members sustained damages arising out of TransCanada's illegal and uniform employment policy.

104. Harbaum knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

105. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to TransCanada's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

106. TransCanada is liable under the FLSA for failing to pay overtime to Harbaum and the Putative Class Members.

107. Consistent with TransCanada's illegal day rate policy, Harbaum and the Putative Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

108. As part of their regular business practices, TransCanada intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Harbaum and the Putative Class Members.

109. TransCanada's illegal day rate policy deprived Harbaum and the Putative Class Members of the premium overtime wages they are owed under federal law.

110. TransCanada is aware, or should have been aware, that the FLSA required it to pay Harbaum and the Putative Class Members overtime premiums for all hours worked in excess of 40 hours per workweek.

111. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

112. This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

113. Those similarly situated employees are known to TransCanada, are readily identifiable, and can be located through TransCanada's records.

## CAUSE OF ACTION
## VIOLATION OF THE FLSA

114. Harbaum realleges and incorporates by reference all allegations in preceding paragraphs.

115. Harbaum brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

116. TransCanada violated, and is violating, the FLSA by failing to pay Harbaum and the Putative Class Members overtime.

117. TransCanada cannot meet its burden to demonstrate Harbaum and the Putative Class Members are exempt from overtime under the administrative exemption.

118. TransCanada cannot meet its burden to demonstrate Harbaum and the Putative Class Members are exempt from overtime under the executive exemption.

119. TransCanada cannot meet its burden to demonstrate Harbaum and the Putative Class Members are exempt from overtime under the professional exemption.

120. TransCanada cannot meet its burden to demonstrate Harbaum and the Putative Class Members are exempt from overtime under the highly compensated exemption.

121. TransCanada failed to guarantee Harbaum and the Putative Class Members a salary.

122. TransCanada failed to pay Harbaum and the Putative Class Members overtime.

123. TransCanada paid Harbaum and the Putative Class Members a day rate.

124. TransCanada knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Harbaum and the Putative Class Members overtime compensation.

125. TransCanada's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

126. Accordingly, Harbaum and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees and costs.

## JURY DEMAND

127. Harbaum demands a trial by jury.

## PRAYER

WHEREFORE, Harbaum, individually, and on behalf of the Putative Class Members respectfully requests that this Court grant the following relief:

   a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Class Members to permit them to join this action by filing a written notice of consent;

   b. A judgment against TransCanada awarding Harbaum and the Putative Members all their unpaid overtime compensation and an additional, equal amount, as liquidated damages;

   c. Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under the FLSA;

   d. An order awarding attorney's fees, costs, and expenses;

   e. Pre- and post-judgment interest at the highest applicable rates; and

   f. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Anthony J. Majestro
**Anthony J. Majestro, Esquire (WVSB 5165)**
**James S. Nelson, Esquire (WVSB 10776)**
**POWELL & MAJESTRO, PLLC**
**405 Capitol Street, Suite P-1200**
**Charleston, WV 25301**
**(304) 346-2889; Fax: (304) 346-2895**
**AND**

**Michael A. Josephson**
TX Bar No. 24014780
(*pro hac vice application forthcoming*)
**Andrew W. Dunlap**
TX Bar No. 24078444
(*pro hac vice application forthcoming*)
**Taylor A. Jones**
TX Bar No. 24107823
(*pro hac vice application forthcoming*)
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
TX Bar No. 24001807
(*pro hac vice application forthcoming*)
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**