# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

| | |
|---|---|
| TERRY O'QUINN, Individually and For Others Similarly Situated, <br><br> v. <br><br> TRANSCANADA USA SERVICES INC. | Case No. 2:19-CV-00844 <br><br> JURY TRIAL DEMANDED <br><br> COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |

## O'QUINN'S OPPOSITION TO TRANSCANADA'S MOTION TO DISMISS NON-RESIDENT OPT-IN PLAINTIFFS

**1.     Summary.**

This Court set a January 28, 2020 deadline for motions under Rule 12(b). Doc. 11. TransCanada nonetheless waited until March 19, 2020 to file its untimely motion to dismiss "pursuant to FED. R. CIV. P. 12(b)(2)." See Doc. 34. But despite blowing the Court's deadline by nearly two months, TransCanada offer any explanation why it should be excused from the Court's deadline. *Id.* That's because there is no excuse for TransCanada's failure to meet the Court's clear deadline. TransCanada's motion should be denied as untimely.

However, even if TransCanada 12(b)(2) motion were timely, it should be denied because this court obtained personal jurisdiction when TransCanada was served with the Original Complaint. Indeed, the Supreme Court's decision in *Bristol-Meyers* was confined to **state** courts' authority to exercise personal jurisdiction under the Fourteenth Amendment and was grounded in long-established principles of sovereignty. The Fourteenth Amendment does not so limit the federal courts' authority to exercise personal jurisdiction, which stems from the Due Process Clause of the Fifth Amendment. Thus, for a federal court to acquire personal jurisdiction under the circumstances present here, the Court need only determine whether the Complaint was properly served on the defendant under FED. R. CIV. P. 4 and the forum state's long-arm statute. Because original named plaintiff Ernie Harbaum

worked for TransCanada in West Virginia, and he properly served his Complaint on TransCanada, this Court can properly exercise personal jurisdiction over TransCanada. *See* Doc. 1 at ¶ 10; Doc. 13 (Executed Summons); Doc. 38 at ¶ 10 (First Amended Complaint). Courts in this Circuit, and indeed, most courts across the country reject the application of *Bristol-Myers* to FLSA and federal class actions. *See, e.g., Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *2 (N.D.W. Va. Dec. 4, 2019) ("the Court concludes that Bristol-Myers Squibb Co. … does not apply to FLSA collective actions").

Of course, the Court need not wrangle with this issue at all because TransCanada's motion is untimely. Docs. 11 (Order setting 1/28/2020 deadline) and 34 (TransCanada's March 19, 2020 motion to dismiss). The Court should deny TransCanada's Motion to Dismiss.

## 2.    TransCanada's Motion Is Untimely.

Citing Rule 12(b)(2), TransCanada asks this Court to dismiss 3 opt-in plaintiffs and "decline to authorize sending notice to other out-of-state potential opt-in plaintiffs." Doc. 35 at 11. Charles Fairchild, who worked for TransCanada in Pennsylvania, filed his notice of consent in this case on November 27, 2019. Doc. 3. On January 2, 2020, TransCanada filed its Answer, indicating that it intended to contest the issue of personal jurisdiction. Doc. 10 at PageID #59-60. Six days later, this Court entered the following:

---

**ORDER AND NOTICE**

Pursuant to the *Local District Court Rules*, the court **ORDERS** that the following dates be fixed as the times by or on which certain events must occur:

01-28-20    Motions under *Fed. R. Civ. P.* 12(b), together with supporting briefs, memoranda, affidavits or other such matter in support thereof.  (All motions unsupported by memoranda will be denied without prejudice pursuant to *L.R.* 7.1(a).)

---

Doc. 11. Thus, TransCanada was specifically notified that if it wished to assert a lack of personal

2

jurisdiction via a motion under Rule 12(b), it was required to do so by January 28, 2020. *Id.*

Dina Cooper-Pollock filed a notice of consent on January 21, 2020. Doc. 14. TransCanada admits it could determine from its records that Cooper-Pollock "did not work on any project in West Virginia." Doc. 34-1 (McDavitt Declaration) at ¶ 4. Nonetheless, the January 28, 2020 deadline for TransCanada to file any 12(b) motions came, and went, without any motion from TransCanada.

TransCanada's motion to dismiss "pursuant to Fed. R. Civ. P. 12(b)(2)" was filed on March 19, 2020. Doc. 34. But the Court "did not modify any deadlines in [its] Order." *Booker v. Fayette Cty. Sheriff's Dep't*, No. 2:14-CV-11523, 2014 WL 2767078, at *1 (S.D.W. Va. June 18, 2014). There have been so-called "out-of-state" opt-ins in this case since November of last year. Doc. 3. TransCanada raised the issue of personal jurisdiction in its Answer. Doc. 10 at PageID #59-60. It nonetheless allowed the January 28, 2020 deadline to pass without filing a motion. Its motion to dismiss is therefore untimely and should be denied. *Booker*, 2014 WL 2767078, at *1.

3.    **Even Assuming TransCanada's Motion Was Timely (and It Wasn't), Dismissal Would Still Be Improper.**

a.    *Bristol-Meyers* **Rests on Constitutional Principles Limiting <u>State</u> Court Authority.**

The Supreme Court's holding in *Bristol-Meyers* interpreted the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment. *See Bristol-Meyers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1779 (2017). The Fourteenth Amendment "sets the outer boundaries of a **state tribunal's** authority to proceed against a defendant[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (emphasis added). Critically, the Supreme Court has emphasized the Fourteenth Amendment reflects limits on "the power of a sovereign to resolve disputes through judicial process[.]" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 879 (2011) (plurality opinion of Kennedy, J.). The Fourteenth Amendment's limits on personal jurisdiction thus reflect the Supreme Court's view that **state courts** possess adjudicative authority only over those who are

3

properly subject to the state's sovereign power as a result of presence within the state or purposeful direction of conduct towards persons in the state. *Id.* at 880-81.

The Supreme Court's holding in *Bristol-Meyers* that a *state court* cannot assert personal jurisdiction over a defendant in an individual personal-injury action when the defendant is neither "at home" in the state nor has engaged in any forum-related activity connected to the individual plaintiff's "specific claims" stems from the Court's concerns about "territorial limitations on the power of respective states." *Bristol-Meyers*, 137 S. Ct. at 1780-81 (quoting *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). Thus, such limitations are grounded in the "federalism interests[,]" *id.* at 1780, in confining institutions of each **state** (including state courts) within the limits of their sovereign authority to avoid infringements "on the sovereignty of [their] sister States[.]" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)).

In short, *Bristol-Meyers* solely concerns the extent of "the State['s] … power to render a valid judgment." *Id.* at 1781 (quoting *World-Wide Volkswagen*, 444 U.S. at 294). In doing so, the Supreme Court repeatedly emphasized its decision was grounded in the Fourteenth Amendment's limits on the powers of **state** courts. *Id.* at 1779. The Supreme Court explicitly recognized that, because its decision "concerns the due process limits on the exercise of specific jurisdiction by a State," it expressly did not address whether, and to what extent, "the Fifth Amendment" restricts "the exercise of personal jurisdiction by a federal court." *Id.* at 1783-84.

### b. The 14th Amendment Does Not Limit the Personal Jurisdiction of Federal Courts.

*Bristol-Meyers*' disclaimer as to its possible effect on federal courts was no accident—it reflects a wealth of precedent differentiating potential due process limits on personal jurisdiction of federal courts from the constraints the Fourteenth Amendment imposes on state courts. Indeed, as the Supreme Court recognized in *Bristol-Meyers*, any due process limits on the federal courts stem from the

4

Fifth Amendment rather than the Fourteenth, as federal courts are not state institutions. *Id.* Unlike state authority, federal power is not, as a constitutional matter, limited by state lines. The federal government has "its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it[,]" without regard to their relationship with any particular state. *Nicastro*, 564 U.S. at 884 ("Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States" without regard to whether it may be hauled into the courts "of any particular State."). Indeed, "[f]or jurisdiction, a litigant may have the requisite relationship with the United States Government but not with the government of *any individual State*." *Id.* (emphasis added).

This is precisely why the Supreme Court long ago recognized that nothing in the *Constitution* prevents "the process of every District Court" from "run[ning] into every part of the United States." *Robertson v. R.R. Labor Bd.*, 268 U.S. 619, 622 (1925). Pursuant to the Fifth Amendment's limits on the federal courts' adjudicative powers, a federal court may constitutionally exercise personal jurisdiction over any person that has minimum contacts with the *United States* as opposed to any particular state or states within the Union. *See Repub. Of Argentina v. Weltover, Inc.*, 504 U.S. 607, 619-20 (1992) (determining personal jurisdiction over a foreign entity on whether the entity has minimum contacts with the United States sufficient to find that it purposefully availed itself of the privilege of conducting activities within the country); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 n.5 (1987) (noting the Fifth Amendment only requires minimum contacts with the nation as a whole).

### c. The Federal Rules of Civil Procedure Only Look to State Law for Purposes of Service of Process.

Under the Federal Rules of Civil Procedure, a district courts' personal jurisdiction is governed in the first instance by Rule 4's provisions regarding service of process, which function as the

gatekeeper over the courts' exercise of personal jurisdiction. *See Carefirst of Maryland, Inc. v. Carefirst*

*Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). As the Supreme Court explained:

> Before a federal court may exercise personal jurisdiction over a defendant, the
> procedural requirement of service of summons must be satisfied. "[S]ervice of
> summons is the procedure by which a court having venue and jurisdiction over the
> subject matter of the suit asserts jurisdiction over the person of the party served."
> *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946). Thus, before a court
> may exercise personal jurisdiction over a defendant, there must be more than notice
> to the defendant and a constitutionally sufficient relationship between the defendant
> and the forum. There also must be a basis for the defendant's amenability to service
> of summons. Absent consent, this means there must be authorization for service of
> summons on the defendant.

*Omni Capital*, 484 U.S. at 104.

Rule 4, thus, looks primarily to state law to determine the amenability of an out-of-state

defendant to service. *See* FED. R. CIV. P. 4(k)(1)(A). When a state's long-arm statute has been

interpreted to be coextensive with the limits of the Due Process Clause, as West Virginia's has, the

only question before the Court is whether the exercise of personal jurisdiction over the Defendant

would be consistent with the Due Process Clause. *Miskell v. Varner*, No. 3:12-cv-52, 2012 WL

12878161, at *3 (N.D.W. Va. Dec. 7, 2012), *aff'd sub nom. In re Miskell*, 511 F. App'x 272 (4th Cir. 2013);

*see also Omni Capital*, 484 U.S. at 410 (Under Rule 4, in the absence of a federal statute authorizing

nationwide service or other service beyond the bounds of the district, "a federal court normally looks

… to the long-arm statute of the State in which it sits to determine whether a defendant is amenable

to service, a prerequisite to its exercise of personal jurisdiction.").

Fourteenth Amendment limits do not apply of their own force to the federal courts, and there

is no other constitutional basis for limiting federal courts' powers to those that state courts would

possess. *See Weinstein v. Todd Marine Enterprises, Inc.*, 115 F. Supp. 2d 668, 670 (E.D. Va. 2000). Rather,

federal courts only look to the Fourteenth Amendment standards because, under Rule 4, "a federal

district court's authority to assert personal jurisdiction in most cases is linked to service of process on

a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting FED. R. CIV. P. 4(k)(1)(A)). And **only in** clearing the initial hurdle of **obtaining valid service** do the federal rules incorporate limits on state court personal jurisdiction.

At the time of service of process, this case was effectively an individual action between former named plaintiff Harbaum and TransCanada. *See* Doc. 1; *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (an FLSA collective action plaintiff represented only herself as conditional certification had not been granted and no opt-in plaintiffs remained in the case); *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011) (Rule 23 class action involves only the named plaintiff(s) and defendant(s) until a class is certified); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013) (same). Thus, whether an action may be served on a non-resident defendant under Rule 4 depended on whether Harbaum's (as the named plaintiff) claims against TransCanada fell within the scope of the relevant state long-arm statute. And nothing in the Federal Rules or the FLSA requires additional service of process on a defendant already brought before the court by the named plaintiff's valid service of process under Rule 4.

Once a federal court has properly acquired personal jurisdiction over a defendant through valid service under Rule 4, the due process limits of a *state* courts' authority drop out of the picture. The scope of an action, the court's authority to render a judgment binding particular persons and/or entities, and other procedural matters are governed by the Federal Rules of Civil Procedure—not by state laws. *See, e.g.*, *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010); *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 428 n.7 (1996); *Burlington N.R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987); *Hanna v. Plumer*, 380 U.S. 460, 469-74 (1965).

### d.  TransCanada is Subject to Personal Jurisdiction in West Virginia.

TransCanada USA Services, Inc. is a Delaware corporation with its headquarters in Houston, Texas. Doc. 34-1 at ¶ 3. This Court should therefore look to whether TransCanada was properly served under the West Virginia long-arm statute. *See* FED. R. CIV. P. 4(k)(1)).[1] "The West Virginia long-arm statute permits the assertion of jurisdiction over a nonresident defendant in seven specified scenarios, including where the defendant '[t]ransact[s] any business in [West Virginia].'" *Beck v. Progressive Advanced Ins. Co.*, No. 5:14-cv-24, 2014 WL 1479873, at *3 (N.D.W. Va. Apr. 15, 2014) (citing W. Va. Code § 56–3–33(a)(1)). "[T]he West Virginia long-arm statute is coextensive with the full reach of due process." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997).

West Virginia technically has two long-arm statutes. *Fredeking, v. Triad Aviation, Inc.*, No. 3:19-cv-0777, 2020 WL 1492891, at *2 n.1 (S.D.W. Va. Mar. 27, 2020). "The second statute, W. Va. Code § 31D-15-1501(d), is a narrow supplement that applies to foreign corporations and elaborates on the '[t]ransacting any business' provision." *Id.* Subsection (a) of § 31D-15-1501 provides that a "foreign corporation may not conduct affairs in this state until it obtains a certificate of authority from the Secretary of State" and subsection (d) holds that a "foreign corporation is deemed to be transacting business in this state if [it] makes a contract to be performed, in whole or in part, by any party thereto in this state." W. Va. Code Ann. § 31D-15-1501. TransCanada does not dispute that it transacts business in this state; it is registered with the West Virginia Secretary of State[2] and hired Harbaum and

---

[1] TransCanada did not contest the fact it was validly served it with process. Doc. 10 at ¶ 19. Nor did it file any motion under Rule 12(b) on this issue. Therefore, the Court may consider proper service established.

[2] *See* https://apps.sos.wv.gov/business/corporations/organization.aspx?org=364295 (West Virginia Secretary of State website, last visited April 1, 2020),

O'Quinn to perform services in this state. *See* Doc. 38. Further, Harbaum properly served TransCanada with the Original Complaint under Rule 4. *See* Doc. 13. This satisfies the West Virginia long-arm statutes, and, therefore, this Court obtained personal jurisdiction over TransCanada when Harbaum served his Original Complaint, and *Bristol-Myers* does not divest this Court of jurisdiction over any plaintiff or opt-in plaintiff.

### e. Like the Majority of Courts Across the Country, Courts in this Circuit Reject the Application of Bristol-Myers to FLSA or Federal Class Action Cases.

"In the wake of the *Bristol-Myers* decision, lower federal courts have split on whether its rationale applies to federal nationwide class actions under Rule 23 of the Federal Rules of Civil Procedure. Fewer courts have addressed the question whether *Bristol-Myers* applies to the FLSA claims of out-of-state opt-in plaintiffs, but they too have reached varying conclusions." *Mason v. Lumber Liquidators, Inc.*, No. 17-cv-4780 (MKB), 2019 WL 2088609, at *5-6 (E.D.N.Y. May 13, 2019), *aff'd*, No. 1:7-cv-4780-MKB-RLM, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019) (internal citations omitted). Most courts, but not all, have declined to apply *Bristol-Myers* analysis of the Fourteenth Amendment's limits on the personal jurisdiction that may be exercised by state courts to FLSA collective action proceeding, under federal law, in federal court. *See, e.g., Seiffert v. Qwest Corp.*, No. CV-18-70-GF-BMM, 2018 WL 6590836, at *2-4 (D. Mont. Dec. 14, 2018) (denying motion to dismiss out-of-state putative collective action members and emphasizing "[t]he Supreme Court's analysis in *Bristol-Meyers* did not intend to restrict the Court's exercise of personal jurisdiction in FLSA collective actions cases"); *Garcia v. Peterson*, 319 F. Supp. 3d 863, 880 (S.D. Tex. July 20, 2018) ("declin[ing] to extend the *Bristol-Meyers*' requirement to analyze personal jurisdiction with regards to each individual plaintiff to the FLSA collective action jurisdictional analysis."); *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780, at *2 (N.D. Cal. Nov. 10, 2017) (rejecting defendant's argument that the court lacked personal jurisdiction over claims of out-of-state putative collective action members); *Thomas v. Kellogg Co.*, 2017

WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017) (denying motion to dismiss out-of-state plaintiffs'
claims); *with, e.g., Roy v. FedEx Ground Package Sys.,* Inc., 353 F. Supp. 3d 43, 58 (D. Mass. 2018) (on
motion for conditional certification, refusing to allow notice be sent to out-of-state potential opt-in
plaintiffs).

Courts following the majority rule often cite the common sense notion that "[a]pplying *Bristol-
Meyers* to FLSA collective actions 'would splinter most nationwide collective actions, trespass on the
expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means
to vindicate employees' rights.'" *Mason*, 2019 WL 2088609, at *6 (quoting *Swamy*, 2017 WL 5196780,
at *2 and emphasizing that "[u]nlike the mass-tort state law claims at issue in *Bristol-Meyers*, the
collective allegations here arise under a federal statute intended to address wage-and-hour practices
**nationwide**." (emphasis added)); *see also Seiffert*, 2018 WL 6590836, at *2 ("the FLSA claims before
the Court arise from a federal statute designed to address employment practices **nationwide**."
(emphasis added) (citing 29 U.S.C. §§ 202, 207(a)); *Hickman v. TL Transp., LLC*, 317 F. Supp. 3d 890,
899 n.2 (E.D. Pa. 2018) ("There are also compelling reasons to doubt that the reasoning in *Bristol-
Myers* applies to the claims of putative class members who worked for [the employer] in Maryland.
Unlike the mass tort action arising under state law in *Bristol-Myers*, this is an opt-in class action arising
under a federal statute that applies to all fifty states."). This is because "[t]he FLSA **does not limit
claims to in-state plaintiffs**." *Seiffert*, 2018 WL 6590836, at *2 (emphasis added) (citing 29 U.S.C. §
216(b)). Accordingly, courts across the country have found that "*Bristol-Meyers* does not apply to divest
courts of personal jurisdiction in FLSA collective actions." *Id.* at *3 (citing *Swamy*, 2017 WL 5196780,
at *2 and emphasizing "[n]othing in the plain language of the FLSA limits its application to in-state
plaintiffs' claims.").

Courts in this Circuit similarly reject the application of *Bristol-Myers* to FLSA or federal class
action lawsuits. *See, e.g., Boger v. Citrix Sys., Inc.*, No. 8:19-cv-01234-PX, 2020 WL 1033566, at *8 (D.

Md. Mar. 3, 2020) ("join[ing] the majority of other Courts declining to extend *Bristol-Myers Squibb* to federal class actions"); *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19-cv-13, 2019 WL 6528594, at \*3 (N.D.W. Va. Dec. 4, 2019) ("the Court concludes that *Bristol-Myers Squibb's* holding does not extend to collective actions under the FLSA"); *Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at \*5 (W.D. Va. July 25, 2018) ("This Court holds, alongside the 'most of the courts that have encountered this issue,' … that *Bristol-Myers Squibb*'s holding and logic do not extend to the federal class action context").

The *Hunt* case from the Northern District of West Virginia is particularly instructive. The court found the Supreme Court in *Bristol-Myers* "limited its holding to mass tort actions filed in state court and specifically declined to address 'whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.'" *Hunt*, 2019 WL 6528594, at \*3. It distinguished the FLSA action before it, holding as follows:

> [U]nlike *Bristol-Myers Squibb*, there is only one suit: the suit between Plaintiff and [the] Defendant[s]. **While Plaintiff may end up representing other class members, this is different than a mass action where independent suits with independent parties in interest are joined for trial.** This is critically important because *Bristol-Myers Squibb* framed the specific jurisdiction analysis at the level of the suit: the suit must arise out of or relate to the defendant's contacts with the forum. Accordingly, unlike the mass action in *Bristol-Myers Squibb*, the only suit before the Court does arise out of or relate to Defendant's contacts with the forum. Absent *Bristol-Myers Squibb*, it is undisputed that the Defendants are subject to specific personal jurisdiction in West Virginia for claims brought by Hunt, the sole named plaintiff in this action, which is all that is needed to satisfy the requirement of personal jurisdiction in an FLSA collective action.

*Id.* (internal citations and quotations omitted).

TransCanada asks this Court to depart from this Circuit's case law and indeed, the majority of courts, and adopt the minority position applying *Bristol-Myers* to FLSA actions. Doc. 35 at 7-8 (relying on *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 53 (D. Mass. 2018) and *Chavira v. OS Rest. Servs., LLC*, No. 18-cv-10029-ADB, 2019 WL 4769101, at \*1 (D. Mass. Sept. 30, 2019)). In *Roy*,

Magistrate Judge Robertson held that § 216(b) of the FLSA "is properly viewed as a rule of joinder under which only the individual opt-in plaintiffs have legal status, not the aggregate class of aggrieved employees" *Id.* at 59. As such, she found that "the opt-in plaintiffs in an FLSA collective action are more analogous to the individual plaintiffs who were joined as parties in *Bristol-Myers* and the named plaintiffs in putative class actions than to members of a Rule 23 certified class. *Id.* at 59-60. This holding directly conflicts with the determination made by a sister-court of West Virginia in *Hunt*, which held that in an FLSA action, "there is only one suit: the suit between Plaintiff and [the] Defendant[s]." *Hunt*, 2019 WL 6528594, at \*3; *see Morgan v. U.S. Xpress, Inc.*, No. 3:17-cv-00085, 2018 WL 3580775, at \*6 (W.D. Va. July 25, 2018) (finding that "when a court validly has personal jurisdiction over a defendant for purposes of that class action suit, the defendant may not attempt to parse the Court's exercise of personal jurisdiction at this finer level of granularity").

Further, *Roy* relied in large part on *Mussat v. IQVIA, Inc.*, No. 17 C 8841, 2018 WL 5311903, at \*4 (N.D. Ill. Oct. 26, 2018) to find that "*Bristol-Myers* generally applies to bar nationwide class actions in federal court where the defendant allegedly injured the named plaintiff outside the forum." *Roy*, 353 F. Supp. 3d at 62. But *Mussat*'s analysis took quite the bruising on appeal. *Mussat v. IQVIA, Inc.*, No. 19-1204, 2020 WL 1161166, at \*5 (7th Cir. Mar. 11, 2020).

In reversing, the Seventh Circuit rejected the application of *Bristol-Myers*' personal jurisdiction concerns to federal class action lawsuits. 2020 WL 1161166, at \*3. In distinguishing *Bristol-Myers*, the Court focused on the representative nature of federal class actions:

> *Bristol-Myers* neither reached nor resolved the question whether, in a Rule 23 class action, each unnamed member of the class must separately establish specific personal jurisdiction over a defendant. In holding otherwise, the district court failed to recognize the critical distinction between this case and *Bristol-Myers*. The *Bristol-Myers* plaintiffs brought a coordinated mass action, which as we noted earlier does not involve any absentee litigants. **In a section 404 case, all of the plaintiffs are named parties to the case.** The statute allows the trial court to consolidate their cases for resolution of shared legal issues before moving on to individual issues. In a Rule 23 class action, by contrast, the lead plaintiffs earn the right to represent the interests of absent class

members by satisfying all four criteria of Rule 23(a) and one branch of Rule 23(b). The absent class members are not full parties to the case for many purposes.

*Id.* at *4 (emphasis added). It recognized that "absent class members are not considered parties for assessing whether the requirement of diverse citizenship under 28 U.S.C. § 1332 has been met" and found that "[a]s long as the named representative meets the amount-in-controversy requirement, jurisdiction exists over the claims of the unnamed members. Nor are absent class members considered when a court decides whether it is the proper venue." *Id.* (internal citations omitted). The Court found "no reason why personal jurisdiction should be treated any differently from subject-matter jurisdiction and venue: the named representatives must be able to demonstrate either general or specific personal jurisdiction, but the unnamed class members are not required to do so." *Id.* This reasoning applies equally to FLSA cases, where there is only one suit before the Court which arises out of and relates to TransCanada's contacts with West Virginia, the plaintiff seeks to represent the rest of the similarly situated plaintiffs, and the only 'named plaintiffs' are the representative plaintiffs actually listed in the complaint. This Court may exercise jurisdiction over the suit and consequently over the claims of all opt-in plaintiffs regardless of whether they worked for TransCanada in West Virginia.

### f.   Dismissing Non-Resident Opt-In Plaintiffs Flies in the Face of the FLSA's Broad Remedial and Representative Nature.

As noted *supra*, "[a]pplying *Bristol-Meyers* to FLSA collective actions 'would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights.'" *Mason*, 2019 WL 2088609, at *6 (quoting *Swamy*, 2017 WL 5196780, at *2). "[T]he FLSA claims before the Court arise from a federal statute designed to address employment practices **nationwide**." *Seiffert*, 2018 WL 6590836, at *2 (emphasis added). **Nothing** in the plain language of the FLSA requires opt-in plaintiffs to be in-state. *See generally* 29 U.S.C. § 201 *et seq.* and, specifically, 29 U.S.C. § 216(b). Rather, the

opposite is true, as the FLSA authorizes plaintiffs to issue notice to other "similarly situated" workers. 29 U.S.C. § 216(b); *see also Swamy*, 2017 WL 5196780, at *2 ("Congress created a mechanism for employees to bring their claims on behalf of other employees who are 'similarly situated,' and **in no way limited those claims to in-state plaintiffs**." (emphasis added) (citing 29 U.S.C. § 216(b)). And generally, when determining whether workers are "similarly situated" under the FLSA, courts look to whether there is a uniform **pay practice or policy**—not whether the employees all worked in the same geographic location. *See, e.g., Prescott v. Prudential Ins. Co.*, 729 F. Supp. 2d 357, 364 (D. Me. 2010) ("courts have found that 'similarly situated' employees have similar (not identical) job duties and pay provisions … and are victims of a common policy or plan that violated the law" (internal citations and quotations omitted)); *see also, Klapatch v. BHI Energy I Power Servs., LLC,* No. CV 18-11581-RGS, 2019 WL 859044, at *2 (D. Mass. Feb. 22, 2019) (conditionally certifying a nationwide class of employees paid straight time for overtime). Indeed, "geographic commonality is not necessary to meet the 'similarly situated' requirement for a FLSA collective action; instead the focus is on whether the employees were impacted by a common policy." *Vargas v. Richardson Trident Co.,* 2010 WL 730155, at *6 (S.D. Tex. Feb. 22, 2010) (collecting cases).

Further, the Supreme Court noted that its decision in *Bristol-Meyers* did not usurp "settled principles" of personal jurisdiction. *Bristol-Meyers*, 137 S. Ct. at 1783. Courts have historically exercised personal jurisdiction over nationwide FLSA collective actions based on the claims of the named plaintiff(s) alone. *See, e.g., Klapatch*, 2019 WL 859044, at *2. *Bristol-Meyers* did not upend that established principle. Were TransCanada's argument to be adopted, an FLSA plaintiff would **<u>never</u>** be able to bring or represent a nationwide class or collective action other than (perhaps) in the defendant's home state. Such a finding simply runs counter to the representative and broad remedial nature of the FLSA.

Indeed, should the Court determine *Bristol-Meyers* applies to every individual Opt-In Plaintiff, this case would be splintered into many different federal courts, all tasked with deciding the same issue

of federal law, with respect to TransCanada's nationwide, uniform pay practice. Doing so would not only waste judicial and party resources by forcing plaintiffs to bring a multitude of virtually identical individual suits, but it would also risk inconsistent judgments regarding claims arising from the same events and brought under the same laws. *See Hoffman-La Roache, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (the collective action mechanism affords plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling of resources" and, in turn, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact."); *Saunders v. Getchell Agency Inc.*, No. 1:13-cv-00244-JDL, 2014 WL 12539643, at *11 (D. Me. Dec. 12, 2014), *adopted*, 2015 WL 1292594 (D. Me. Mar. 23, 2015); *see also Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30."); *Oropeza v. Appleillinois, LLC*, 2010 WL 3034247, at *3 (N.D. Ill. Aug. 3, 2010) ("A collective action serves the dual function of avoiding a multiplicity of duplicate actions while allowing plaintiffs the advantage of lower individual costs by pooling resources to vindicate rights.").

As Plaintiffs have alleged from the beginning, there are common questions of law and fact common to Plaintiffs,  the Opt-In Plaintiffs, and the Putative Class Members, including: 1) whether TransCanada's decision to pay a day rate with no overtime compensation to these workers was made in good faith; 2) whether TransCanada's violation of the FLSA was willful; and 3) whether TransCanada's illegal pay practice applied to the Putative Class Members. Doc. 1 at ¶ 102; Doc. 38 at ¶ 104. Accordingly, forcing plaintiffs to proceed in multiple separate but parallel actions would be a waste of resources only to the detriment of plaintiffs.

**4.    Conclusion**

Whether because it is untimely or for lack of merit, the Court should deny TransCanada's Motion to Dismiss.

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Taylor A. Jones*
      **Michael A. Josephson**
      TX Bar No. 24014780
      **Andrew W. Dunlap\***
      TX Bar No. 24078444
      **Taylor A. Jones\***
      TX Bar No. 24107823
      **JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tjones@mybackwages.com
*\*Admitted Pro Hac Vice*

**Richard J. (Rex) Burch**
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**Anthony J. Majestro (WVSB 5165)**
**James S. Nelson (WVSB 10776)**
**POWELL & MAJESTRO PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 – Telephone
304-346-2895 – Facsimile

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

16

**CERTIFICATE OF SERVICE**

On April 2, 2020, I served this document on all parties and/or their counsel of record via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

_/s/ Taylor A. Jones_

**Taylor A. Jones**