IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

TERRY O'QUINN

                 Plaintiff,

v.                                      CIVIL ACTION NO.  2:19-cv-00844

TRANSCANADA USA SERVICES, INC.,

                  Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Compel Certain Opt-in Plaintiffs to Arbitration and Stay Proceedings, [ECF No. 44], and a Motion to Dismiss for Lack of Personal Jurisdiction, [ECF No. 34], filed by Defendant TransCanada USA Services, Inc. ("TransCanada"). Also pending before the court is a Motion for Conditional Class Certification and Court-Authorized Notice, [ECF No. 26], filed by Plaintiffs. For the reasons that follow, Defendant's Motion to Compel Arbitration, [ECF No. 44] is **GRANTED** in part and **DENIED** in part, Defendant's Motion to Dismiss, [ECF No. 34], is **DENIED**, and Plaintiff's Motion for Conditional Class Certification, [ECF No. 26], is **GRANTED**.

### I.    Introduction

This case involves claims to recover unpaid overtime wages and other damages from TransCanada under the Fair Labor Standards Act (the "FLSA"), specifically pursuant to 29 U.S.C. § 216(b). Original named Plaintiff, Ernie Harbaum, filed a Collective Action Complaint against TransCanada on November 26, 2019. [ECF No.

1]. Plaintiff Harbaum motioned for leave to amend his complaint, [ECF No. 33], on March 13, 2020. The court granted leave to amend, [ECF No. 37], and the First Amended Collective Action Complaint (the "Complaint"), [ECF No. 38], which added named Plaintiff Terry O'Quinn, was filed on March 23, 2020. On March 25, 2020, Plaintiff Harbaum filed a Notice of Dismissal Without Prejudice [ECF No. 39], dismissing his claims against TransCanada. This dismissal leaves Plaintiff O'Quinn as the sole remaining named Plaintiff in this action.

There are several issues currently pending before this court. First, Plaintiff requests that this court conditionally certify class under the FLSA. [ECF No. 26]. Second, Defendant moves to dismiss the Opt-in out-of-state Plaintiffs, arguing that this court does not have personal jurisdiction over Defendant on their claims. [ECF No. 34]. Third, Defendant asks this court to stay the case and compel Opt-in Plaintiffs Craig Cypert, Charles Copley, Chad Copley, and Larry Krone to arbitration pursuant to the terms of their arbitration agreements. [ECF No. 44].

Plaintiff requests that this court grant conditional certification of and authorize notice be sent to:

> All Inspectors employed by, or working on behalf of, TransCanada who were classified as independent contractors and paid a day rate with no overtime at any time in the past 3 years (the "Inspectors").

Pl.'s Mot. for Conditional Certification and Court-authorized Notice, [ECF No. 27]. Plaintiff further requests that this court (1) approve the Notice and Consent forms attached to the Motion as Exhibit 10; (2) authorize proposed notice methods; (3) order TransCanada to produce each Inspectors' contact information to Class Counsel within

10 days of the court's ruling; and (4) authorize a 60-day notice period for the Inspectors to join the class. *Id.* In support of these requests, Plaintiff includes the Declarations of TransCanada employees, Ernie Harbaum (Ex. 1), Charles Fairchild (Ex. 2), Mark Dubose (Ex. 3), Terry O'Quinn (Ex. 4), Charles Copley (Ex. 5), Larry Krone (Ex. 6), and Craig Cypert (Ex. 7). *See* [ECF Nos. 26–1, 26–2, 26–3, 26–4, 26–5, 26–6, 26–7]. Plaintiff also includes copies of Taxable Pay Summaries (Ex. 8) and Employee Timesheets (Ex. 9).

### a. Factual background

TransCanada is a company whose employees work on the transportation of energy resources and construction of energy infrastructure. "It operates thousands of 'projects' across over thirty states related to the construction and maintenance of natural gas pipelines." Dec. of Ted McDavitt, Ex. A [ECF No. 36–1] ¶ 3. "To meet the demands of its various construction projects and provide third-party independent oversight, TransCanada's affiliate, TransCanada USA Operations Inc. ("TransCanada Operations"), has contracted with ten preferred Field Service Providers/Suppliers ("Suppliers") to supply manpower, work, and inspection services, including Gulf Interstate Field Services ("GIFS")…" and System One Holdings LLC ("System One"). Dec. of Ted McDavitt, Ex. A, [ECF No. 51–1] ¶ 3. The Field Services Agreement ("FSA") governs how Suppliers provide personnel to any TransCanada affiliated project. *Id.* at ¶ 4. The FLSA provides that the Supplier is "independent" and that any work performed will be supplied "by the Supplier under its own direction and control." *Id.* at ¶ 6. "TransCanada engages Suppliers to provide third-party

Project and Construction Managers to oversee its projects. TransCanada may also employ Project and Construction Managers ['Inspectors'] to monitor the progress of various projects." *Id.* at ¶ 7. Inspectors' main role is to ensure that projects are completed according to TransCanada's and/or its clients' specifications and guidelines. *See* Dec. of Terry O'Quinn, Ex. 4 [ECF No. 26–4] ¶ 12.

Plaintiff alleges that TransCanada uniformly misclassified Inspectors as independent contractors, rather than as employees, and routinely failed to pay Inspectors for overtime work. Plaintiff avers that Inspectors were functionally treated as employees. *See* Dec. of Terry O'Quinn, Ex. 4 [ECF No. 26–4] ¶ 16. Plaintiff alleges that Defendant sets and controls Inspectors' pay (a non-negotiable day rate), sets their schedule, controls how they perform their job duties, requires them to adhere to its policies and procedures, guidelines, and strict directives, has the ability to remove them from the job if they fail to adhere to these policies, does not require them to significantly invest to perform their job, and does not require them to possess any unique skills other than the skills required by all workers in their respective position. Pl.'s Mem. in Supp. of Mot to Conditional Cert. and Court Authorized Notice, 15 [ECF No. 27].

### 1. Representative Plaintiff Terry O'Quinn

Plaintiff O'Quinn worked as a Pipeline Inspector exclusively for Defendant from approximately May 2018 until November 2018. Dec. of Terry O'Quinn, Ex. 4 [ECF No. 26–4] ¶ 2. O'Quinn worked on projects in West Virginia. O'Quinn stated in a Declaration that "[b]ased on my experience with TransCanada, my conversations

with TransCanada's personnel, my observations on location, and my conversations with co-workers, I believe all of TransCanada's Inspectors classified as independent contractors and paid a day rate performed the same or similar work." *Id.* at ¶ 13. TransCanada classified O'Quinn as an independent contractor and paid O'Quinn a day rate, without regard to the number of hours worked. *Id.* at ¶¶ 4, 7. Plaintiff alleges that TransCanada improperly classifies these Inspectors as independent contractors and pays them a set day rate with no overtime. According to Plaintiff, O'Quinn and Putative Class Members regularly worked more than 40 hours a week but never received overtime for hours worked in excess of 40 hours in a single workweek. *See* First Amend. Collective Action Compl., [ECF No. 26] ¶ 3–4. O'Quinn specifically on average typically worked 66 hours a week. Dec. of Terry O'Quinn, Ex. 4 [ECF No. 26–4] ¶ 2.

### 2. Opt-in Plaintiffs ("Opt-ins")

Plaintiff provides the Declarations of five Opt-in Plaintiffs who worked for Defendant: Charles Fairchild (Exhibit 2), Mark Dubose (Exhibit 3), Charles Copley (Exhibit 5), Larry Krone (exhibit 6), and Craig Cypert (Exhibit 7). [ECF Nos. 26–2, 26–3, 26–5, 26–6, 26–7].

All five individuals worked as Inspectors. Fairchild worked as a Utility Inspector for TransCanada from approximately January 2019 until September 2019 on a project in Pennsylvania. Dec. of Charles Fairchild, Ex. 2 [ECF No. 26–2] ¶¶ 2, 10. Dubose worked as a General Inspector for TransCanada from approximately April 2018 until September 2019 on projects in Louisiana and West Virginia. Dec. of Mark

Dubose, Ex. 3 [ECF No. 26–3] ¶¶ 2, 10. Copley worked as a Chief Inspector for TransCanada from approximately February 2017 until July 2019 on projects in Ohio, West Virginia, Pennsylvania, and Virginia. Dec. of Charles Copley, Ex. 5, [ECF No. 26–5] ¶¶ 2 10. Krone worked as a Slip Inspector for TransCanada from approximately March 2017 through Present on projects in West Virginia and Ohio. Dec. Larry Krone, Ex. 6 [ECF No. 26–6] ¶¶ 2, 10. Cypert worked for TransCanada as a Tier 3 Coating Inspector from approximately January 2017 until October 2019 on projects in West Virginia, Louisiana, and Ohio. Dec. of Craig Cypert, Ex. 7 [ECF No. 26–7] ¶¶ 2, 10.

Each Inspector reported that his main job was to ensure that the assigned project was completed according to TransCanada's and/or its clients' specifications and guidelines. [ECF Nos. 26–2, 26–3, 26–5, 26–6, 26–7] ¶ 12. Each Inspector was paid a flat day rate (regardless of number of days worked or number of hours worked in a day). *Id.* at ¶¶7–9. And on average each Inspector typically worked 60 hours a week. *Id.* at ¶ 17.

In addition to the five Opt-ins who provided Declarations, Defendant points this courts attention to Opt-ins Dina Cooper-Pollock and Christopher Richardson, who never performed work on a TransCanada project in West Virginia. *See* Dec. of Ted McDavitt [ECF No. 34–1] ¶ 4. I find it prudent to note that there have been several additional notices of consent to join the putative class of Opt-ins since the filing of the instant Motions before the court.[1]

---

[1] *See* [ECF No. 43] (Jerry Lower); [ECF No. 47] (Charlie Chambers, Joe Lea, and Herbert Sterling III); [ECF No. 49] (Jeffrey Schwoerer and Erick Sizemore); [ECF No.

## II.     Arbitration

Defendant moves to compel arbitration of certain Opt-ins and to stay the proceeding. [ECF No. 44]. The Motion is **GRANTED in part** and **DENIED in part** for the reasons that follow.

### a.  Legal standard

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in any contract involving interstate commerce "shall be valid, irrevocable, and enforceable" unless there are grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, (1983). To compel arbitration under the FAA, the movant must demonstrate: "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction ... to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.'" *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (*quoting Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)). If a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500 (4th Cir. 2002). FLSA claims are subject to arbitration under the FAA. *Id.* at 506. Class and collective action waivers are valid and enforceable. *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018).

---

52] (Charles Jones, Stephen McGuire, and Robert Stijes); [ECF No. 53] (Grant Collram and Willian Stanley); [ECF No. 54] (Walker Rose).

7

While a court is required to resolve "any doubts concerning the scope of arbitrable issues ... in favor of arbitration," *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005), that presumption "can't 'override[ ] the principle that a court may submit to arbitration only those disputes the parties have agreed to submit.'" *Weckesser v. Knight Enterprises S.E.*, LLC, 735 Fed. App'x. 816, 821 (4th Cir. 2018). "Arbitration is 'a matter of consent, not coercion,' and federal arbitration policy does not alter that maxim. The 'touchstones of arbitrability analysis' are the 'twin pillars' of the parties' 'consent and intent' to arbitrate." *Raymond James Fin. Servs., Inc. v. Cary*, 709 F.3d 382, 385–86 (4th Cir. 2013) (internal citations omitted).

"Although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts." *Wood*, 429 F.3d at 87. Because "Congress did not intend for the FAA to force parties who had not agreed to arbitrate into a non-judicial forum," the FAA allows a party to challenge the enforceability of an arbitration clause in a district court by relying on state contract principles. *See Sydnor v. Conseco Fin. Serv. Corp.*, 252 F.3d 302, 305 (4th Cir. 2001). The FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

"[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (internal

citation omitted). Accordingly, "if a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law" then the court must stay the proceeding according to Section 3 of the FAA. *Id.*; *see also* 9 U.S.C. § 3.

The court looks to state contract law, to determine whether a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a claim. *See* Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009). Here, the parties agree that Pennsylvania law applies. Under Pennsylvania law, "a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent." *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1271 (Pa. Super. Ct. 2004).

### b. Whether this court should compel arbitration of certain Opt-ins' claims

First, Plaintiff argues that TransCanada is not a party to nor third-party beneficiary of the Confidentiality, Non-Solicitation and Work Product Assignment Agreement, and Mutual Agreement to Arbitrate Claims (the "Arbitration Agreement(s)"), thus the agreement does not apply to this suit. *See* Pl.'s Resp. [ECF No. 50] 3–6. The crux of Plaintiff's argument here is that TransCanada failed to show that it was System One's client. *See id.* Second, Plaintiff argues that a stay is not the appropriate remedy because TransCanada's Motion expressly applies only to a portion of the Opt-ins and does not include the representative Plaintiff Terry O'Quinn. *Id.* at 7. Plaintiff therefore argues that should I find that the Arbitration Agreements apply to Opt-ins Craig Cypert, Chad Copley, Charles Copley, and Larry

Krone, then the claims of those Opt-ins should be severed and stayed. *Id.* at 8. I will address each argument in turn.

I find there are applicable Arbitration Agreements regarding the aforementioned Opt-ins. Plaintiff does not dispute that these Opt-ins entered into identical Arbitration Agreements with System One that cover the types of claims alleged in this suit. *See* Pls.' Opposition to TransCanada's Mot. to Compel Arbitration [ECF No. 50] 1. Furthermore, the declaration of Susan Burgess Tencza, Senior Vice President, Human Resources at System One, demonstrates the following: (1) the aforementioned Opt-ins were employed by System One, (2) they each entered into the Arbitration Agreement, and (3) through their employment with System One, they were assigned to work at System One's client's site in West Virginia. *See* Ex. A, Dec. of Susan Burgess Tencza [ECF No. 30–1]. The Arbitration Agreements require "the resolution by arbitration of all claims or controversies (including tort, contract or statutory), whether or not arising out of Employee's employment (or the termination of that employment)." *See* Arbitration Agreements Ex. A–1, A–2, A–3, A–4 [ECF No. 30–1] ¶ 4.2. The Arbitration Agreements further require that claims "must be brought in Employee's individual capacity, and not as a plaintiff, representative class member or class member in any purported class, collective or representative proceeding, to the maximum extent permitted by applicable law." *Id.*

Plaintiff further does not dispute that the Opt-ins' agreements with System One state these employees agree to arbitrate any claim they "may have against System One's client(s), if Employee's claim against System One's client(s) arises out

of Employee's employment with System One." *See* Pls.' Opposition to TransCanada's Mot. to Compel Arbitration [ECF No. 50] 1; *see also* Arbitration Agreement Ex. A–1 [ECF No. 30–1] ¶¶ 4.1, 4.2. Moreover, the Arbitration Agreements expressly state, "System One's client(s) is an intended beneficiary of Section 4 of this Agreement." Arbitration Agreement Ex. A–1 [ECF No. 30–1] ¶ 4.2. Plaintiff merely argues that TransCanada did not demonstrate that it was System One's client. *See* Pls.' Opposition to TransCanada's Mot. to Compel Arbitration [ECF No. 50] 1.

As previously stated, TransCanada is a company whose employees work on the transportation of energy and constructing of energy infrastructure. Dec. of Ted McDavitt Ex. A [ECF No. 51–1] ¶ 3. To meet the demands of TransCanada's various construction projects and provide third-party oversight, TransCanada's affiliate, TransCanada Operations, has contracted with ten preferred Suppliers to supply inspection services. *Id.* Defendant offers as evidence of its relationship with System One the declaration of Ted McDavitt, who is a Manager, Construction Management Services, Commissioning, and Quality Assurance–US Natural Gas Projects for TransCanada USA Services, Inc. *See id.* Mr. McDavitt's declaration explicitly states that System One is one of the Suppliers with whom TransCanada Operations is contracted. *Id.* Field Services Agreements ("FSA") governs how Suppliers provide personnel to any TransCanada-affiliated project. *Id.* at ¶ 4. Defendant also offers a copy of the FSA between TransCanada Operations and System One. *See* Ex. 1 FSA [ECF No. 51–1]. According to the declaration of Mr. McDavitt and the terms of the FSA itself, TransCanda Operations executed the FSA for the benefit of its affiliates,

including TransCanada. *See* Ex. A Dec. of Ted McDavitt [ECF No. 51–1]; Ex. 1 FSA [ECF No. 51–1] ¶¶ 2.1(a), 2.1(f), 3. The FSA further demonstrates that Defendant TransCanada is a client of System One.

The language of the Arbitration Agreements signed by Opt-ins Craig Cypert, Chad Copley, Charles Copley, and Larry Krone plainly state that System One's clients are intended beneficiaries of the contract. As the Fourth Circuit has held, "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir.2000). Furthermore, Pennsylvania contract law allows third-party beneficiaries, who are not signatories, to enforce an arbitration agreement, provided that it comports with the parties' intent. Here, TransCanada is a client of System One. The Arbitration Agreements explicitly benefit System One's clients. It is reasonable to infer from the language of the Arbitration Agreements then that Opt-ins knew they were agreeing to arbitrate claims against System One's clients. TransCanda is a third-party beneficiary to the Arbitration Agreements and can thus enforce relevant provisions. As part of their employment with System One, these Opt-ins were assigned by System One to work at its client, TransCanda's, site in West Virginia. Ex. A Dec. of Susan Burgess Tencza [ECF No. 44–1]. These Opt-ins' claims arose from work they completed at TransCanada's site in West Virginia. Opt-ins Craig Cypert, Charles Copley, Chad Copley, and Larry Krone filed notices of

consent to join in this case and therefore have failed to arbitrate and are thus in violation of their respective Arbitration Agreements. *See* [ECF Nos. 8–1, 20–1, 23].

Because a valid arbitration agreement exists as to the aforementioned Opt-ins and covers the claims at issue, I have "no choice but to grant a motion to compel arbitration" of their claims. *See Adkins*, 303 F.3d at 500. But, turning to Plaintiff's second argument, I find that it is more appropriate to sever these Opt-ins' claims, rather than stay the entire proceeding. Courts have wide discretion in determining when severance is appropriate. *See Dougherty v. Mieczkowski*, 661 F. Supp. 267, 277 (D. Del. 1987) (citing *Hohlbein v. Heritage Mutual Ins. Co.*, 106 F.R.D. 73, 78 (E.D.Wis.1985)). In determining whether severance is appropriate, courts look to factors such as, "whether severance would facilitate settlement or judicial economy…the convenience of the parties, avoiding prejudice, promoting expedition and economy, and the separability of law and logic." *Smith v. Dolgencorp*, LLC, No. 1:16-CV-0959-VEH, 2017 WL 818570, at *4 (N.D. Ala. Mar. 2, 2017) (citing *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003); *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996)). In finding an enforceable arbitration agreement, other district courts have severed opt-in plaintiffs' claims and stayed only those plaintiffs' cases in the context of FLSA actions. *See e.g.*, *Smith*, 2017 WL 818570 at *4–5; *Zulauf v. Amerisave Mortg. Corp.*, No. 1:11-CV-1784-WSD, 2011 WL 12677018, at *17 (N.D. Ga. Nov. 23, 2011), amended, No. 1:11-CV-1784-WSD, 2012 WL 12096402 (N.D. Ga. Jan. 18, 2012); *Carter v. Countrywide Credit Indus., Inc.*, 189 F. Supp. 2d 606, 621 (N.D. Tex. 2002).

In this case, I find that severing Opt-ins Craig Cypert, Charles Copley, Chad Copley, and Larry Krone and staying their claims is in the interests of justice, judicial economy, and most fair. Representative Plaintiff O'Quinn is not subject to an Arbitration Agreement nor are the rest of the Opt-ins not specified in Defendant's Motion to Compel Arbitration. [ECF No. 44].

Defendant's Motion to Compel Certain Opt-In Plaintiffs to Arbitration and Stay Proceedings [ECF No. 44] is therefore **GRANTED** in part and **DENIED** in part. The Motion is **GRANTED** in so far as Opt-ins Craig Cypert, Charles Copley, Chad Copley, and Larry Krone are compelled to arbitration. Their respective claims are hereby severed and stayed until the completion of arbitration. The Motion is **DENIED** in so far as named Plaintiff O'Quinn and additional Opt-ins not specified in the Motion [ECF No. 44] may proceed with their claims.

### III.   FLSA Conditional Class Certification

Plaintiff moves for conditional class certification and court-authorized notice pursuant to the FLSA. [ECF No. 36]. The Motion is **GRANTED** for the reasons that follow.

### a.  Legal standard

#### 1.  Similarly situated

The FLSA allows a court to certify collective actions by opt-in plaintiffs who are "similarly situated." 29 U.S.C. § 216(b). Section 216(b) does not define "similarly situated," and neither has the Fourth Circuit. However, Courts generally use a two-step approach to certify FLSA collective actions. See e.g., *Porter v. Petroleum Transp.,*

*Inc.*, No. 2:10-CV-01384, 2012 WL 2557751, at *1 (S.D.W. Va. June 28, 2012); *Purdham v. Fairfax Cty. Public Sch.*, 629 F.Supp.2d 544 (E.D. Va. 2009); *Westfall v. Kendle Intern* ., CPU, LLC, No. 1:05–cv–118, 2007 WL 486606, at *8 (N.D.W. Va. 2007); *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 264 (D.Conn.2002) (citing *Mooney v. Aramco Servs, Co.*, 54 F.3d 1207 (5th Cir.1995)); *Schwed v. G.E. Co.*, 159 F.R.D. 373 (N.D.N.Y. 1995). "In the first phase of this inquiry a court examines the pleadings and affidavits of the proposed action in search of a 'modest factual showing' that the proposed class is similarly situated." *Porter*, 2012 WL 2557751, at *1 (citing *Realite v. Ark Rest. Corp.*, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998)). Once this hurdle has been cleared, a court conditionally certifies the class so that potential plaintiffs may be notified of the pending action and choose to opt-in if they wish to do so. And the action proceeds as a representative action throughout discovery.

The second phase of the inquiry, undertaken after discovery is largely completed, "is typically precipitated by a motion for 'decertification' by the defendant." *Westfall*, 2007 WL 486606, at *8 (quoting *Mooney*, 54 F.3d at 1214). If at this point the court finds that the claimants are similarly situated, the action proceeds to trial. *Id.* If the court finds that the claimants are not similarly situated, the court decertifies the action and dismisses the opt-ins without prejudice. *Id.* The class representative can then proceed to trial with his or her individual claims. *Id.*

Here, I will limit my consideration to the first phase of the §216(b) inquiry: whether Plaintiff and other proposed class members are "similarly situated" enough to preliminarily certify a class. A proposed class is "similarly situated" for the

purposed of the initial inquiry when the plaintiff shows "that putative class members were together the victims of a single decision, policy, or plan that violated the law." *Porter*, 2012 WL 2557751, at *1 (citing *Reeves v. Alliant Techsystems Inc.*, 77 F.Supp.2d 242, 247 (D.R.I. 1999)). The standard employed by the court in deciding if the employees are similarly situated is a "fairly lenient standard." *See Reta v. Kim*, No. 8:10-CV-00365-AW, 2011 WL 1103154, at *4 (D. Md. Mar. 23, 2011). At this stage in the proceedings, factual distinctions between putative class members, such as, (1) having different supervisors, (2) having different job duties, (3) working in facilities as distinct locations, and (4) difference is amount paid, are not fatal to a motion for conditional class certification in an FLSA action. *See Mondragon v. Scott Farms, Inc.*, No. 5:17-CV-00356-FL, 2019 WL 489117, at *7 (E.D.N.C. Feb. 7, 2019) (granting a motion for conditional class certification in an FLSA action despite factual distinctions amongst the putative class members).

The inquiry at the notice stage is "necessarily limited because the exact contours of the representative class members is largely unknown." *Choimbol v. Fairfield Resorts*, Inc., 475 F. Supp. 2d 557, 563 (E.D. Va. 2005). "Specifically, the Court will examine whether the plaintiffs raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." *Id.*; *see also Westfall*, 2007 WL 486606, at *8 (noting some courts have "defined similarly situated as a test examining the existence of a factual nexus between the claims of the named plaintiff and those

16

who have chosen to opt-in to the action"). "During this stage, the Court does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-CV-000432, 2015 WL 4112312, at *1 (S.D. Ohio July 7, 2015).

Some courts in this circuit have noted, however, "[a] court's discretion to facilitate notice is not unfettered. Indeed, courts should not exercise their discretion to facilitate notice unless [t]he facts and the circumstances of the case illustrate that a class of similarly situated aggrieved employees exists." *Deskins v. S. W. Virginia Cmty. & Tech. Coll.*, No. 2:18-CV-01109, 2019 WL 3987759, at *3 (S.D.W. Va. Aug. 22, 2019) (quoting *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547–48 (E.D. Va. 2009) (internal citation omitted)). "The relevant inquiry ... is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion." *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000) (citation omitted).

### 2. Notice

The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167 (1989). The benefits of a FLSA collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170. "By monitoring preparation and distribution of the notice, a

court can ensure that it is timely, accurate, and informative." *Id.* at 172; *see also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th Cir. 1992).

### b. Whether this court should conditionally certify class and facilitate notice under the FLSA

#### 1. Conditional certification of class

I find that Plaintiff and Opt-ins have identified a common policy or practice alleged to violate the FLSA and therefore have made the requisite showing at this stage that the putative class is similarly situated. Accordingly, conditional certification of class is appropriate. Plaintiff offers the declarations of Plaintiff O'Quinn and other Opt-ins, as well as payroll records, to demonstrate that TransCanada paid Inspectors on a day rate basis without any guaranteed salary or overtime. Ex. 2 [ECF No. 26–2] ¶¶ 7–8, 14–15; Ex. 3 [ECF No. 26–3] ¶¶ 7–8, 14–15; Ex. 4 [ECF No. 4] ¶¶ 7–8, 14–15; Ex. 8 [ECF No. 26–8]; Ex. 9 [ECF No. 26–9].[2] The payroll records indicate that TransCanada paid O'Quinn and other Inspectors a flat amount per day, regardless of number of hours worked in a day. *See id.* TransCanada paid Inspectors according to this day rate system regardless of the type of Inspector they were or the location of their jobs. *See id.* Evidence offered by Plaintiff indicates that the Opt-ins regularly worked in excess of 40 hours a week. *Id.* The declarations of the Inspectors indicate that, based on their personal experience, TransCanada

---

[2] Plaintiff also includes the declarations of Charles Copley attached as Exhibit 5 [ECF No. 26–5], Larry Krone attached as Exhibit 6 [ECF No. 26–6], and Craig Cypert attached as Exhibit 7 [ECF No. 26–7]. These Opt-ins are severed from this collective action pursuant to this order because of their individual Arbitration Agreements. Accordingly, I do not consider their declarations in determining whether to conditionally certify class.

applied this same day rate scheme to numerous Inspectors. Ex. 2 [ECF No. 26–2] ¶¶ 14–15; Ex. 3 [ECF No. 26–3] ¶¶ 14–15; Ex. 4 [ECF No. 4] ¶¶ 14–15. According to these declarations, despite being classified as independent contractors, TransCanada directed, controlled, and supervised the work of the Inspectors—requiring them to adhere to its policies and procedures, controlling their pay, prohibiting negotiation of their pay, and dictating their work schedules.  Ex. 2 [ECF No. 26–2] ¶¶ 14-15; Ex. 3 [ECF No. 26–3] ¶¶ 14–15; Ex. 4 [ECF No. 4]. These declarations along with the payroll records provide the modest evidence necessary to show that a similarly situated group of potential plaintiffs who share a common employment experience exists such that conditional class certification is appropriate.

In opposing Plaintiff's Motion, TransCanada points to two cases involving very similar claims made against its third-party vendor (also known as a Supplier), GIFS. I find it prudent to address both cases. The first case, *Hughes v. Gulf Interstate Field Servs., Inc.*, No. 2:14-CV-000432, 2015 WL 4112312, at *1 (S.D. Ohio July 7, 2015), involved claims alleging that GIFS's day rate payment practices violated the overtime requirements under the FLSA. Much like in this case, the plaintiffs in *Hughes* claimed that workers received a flat amount for each day worked but did not receive any premium pay for hours worked in excess of forty hours. *Id.* "With respect to the FLSA conditional certification, [p]laintiffs reques[ted] that notice be sent to: 'All Field Service Workers employed by Gulf Interstate and paid a day rate during the period [Three (3) years prior to the Court's Order approving Notice] to present.'" *Id.* The plaintiffs submitted affidavits from employees, all assigned to one project—the

MarkWest Ohio Project. In that case, the Honorable Edmund A. Sargus, Jr., found conditional class certification was appropriate as to any inspectors paid a day rate assigned to the MarkWest Ohio Project. *Id.* Judge Sargus determined, however, that the plaintiffs could not "make a modest factual showing" that a nationwide collective class should be certified. *Id.* He held that the plaintiffs did not submit any evidence to support a conditional class outside the MarkWest Ohio project, and therefore he refused to conditionally certify class nationwide. *Id.*

I find *Hughes* to be dissimilar to this case. *Hughes* is distinguishable because that case involved plaintiffs attempting to certify a nationwide class of workers from many different jobsites based on the declarations of workers from one jobsite, at one location, on one project. *See Hughes*, 2015 WL 4112312, at *1. In this case, however, Plaintiffs submitted declarations from workers on different projects, in different locations. [ECF No. 26]. The factual showing in this case therefore speaks to a wider class of workers than the geographically limited factual showing in *Hughes*.

The second case heavily relied on by Defendant is *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-01571, 2017 WL 1105236, at *1 (M.D. Pa. Mar. 24, 2017). That case involved "nearly identical" claims as to those brought in *Hughes*. *Id.* at 3. The plaintiffs in *Sloane* alleged that pipeline inspectors employed by GIFS were paid a day rate with no accounting for overtime worked in violation of the FLSA. *Id.* As in *Hughes* and in the instant case, the plaintiffs sought to conditionally certify a nationwide class of inspectors. In *Sloane*, the Honorable Matthew Brann rejected the plaintiffs' request to certify a nationwide collective action of pipeline inspectors under

the FLSA. *Id.* at 7. Judge Brann found that "because plaintiffs ha[d] engaged in significant discovery in the three years since the *Hughes* case was initiated, they must offer something more than a modest factual showing to obtain certification." *Id.* Instead of applying the fairly lenient standard typically used at the first stage of conditionally certifying a collective action under the FLSA, Judge Brann applied an intermediate standard, which presents a higher bar to the plaintiffs. *Id.*

Judge Brann also found significant variance among the inspectors, clients, worksites, job responsibilities and projects. *Id.* at 2. He reasoned that,

> Each type of inspector possesses different qualifications and expertise, and performs different job duties. Nevertheless, Plaintiffs seek certification of collective action generically comprising "all current and former employees of [GIFS] who performed work as a pipeline inspector in the United States in any workweek between three years prior to the date of the Court's Order and the present." The proposed class otherwise embraces no limitations based on geography, timeframe, client, position type, or project nature, though it does incorporate a carve-out for three separate projects where employees are believed not to have suffered any unlawful treatment.

*Id.* GIFS staffs jobs all over the country for over 40 different clients. *Id.* The job duties differ from project to project "as each client sets the job duties for each [GIFS] employee on its project." *Id.* GIFS "generally has no authority to direct the tasks performed by its employees on its clients' respective projects, or control when or how such tasks are performed." *Id.* Instead, GIFS's clients "generally assign work to [GIFS's] employees, and [GIFS's] employees exercise various levels of discretion and independent judgment in performing their assigned tasks." *Id.* "GIFS's various clients, not GIFS, control each staffed employee's work schedule, whether the job site

is open for work on any particular day, and any applicable sick leave and vacation policies." *Id.* (internal citation omitted). "Because GIFS is a staffing company, its inspectors' duties depend upon the demands of each particular client." *Id.* at 8. Judge Brann therefore concluded that the "opt-ins share no common thread." *Id.* at 8–13.

*Sloane* is distinguishable from this case for two primary reasons. First, Judge Brann applied a stricter standard in deciding whether to conditionally certify class than is appropriate here. *See Sloane*, 2017 WL 1105236, at *7. Unlike, in *Sloane*, where parties had already engaged in discovery, in this case discovery has not yet occurred. And I do not think that the discovery that took place in *Sloane* and *Hughes*, can supplant discovery here. Therefore, the intermediate standard, which required plaintiffs in *Sloane* to clear a higher bar to attain conditional certification of class, is not suitable in this case.

Second, the fact that the defendant in *Sloane*, GIFS, was a third-party vendor staffing a variety of different jobs versus a client who "sets the job duties" on its own projects and "control[s] when and how such tasks are performed" was significant in Judge Brann's decision. *See id.* at *2–8. He emphasized GIFS's role as a staffing company in concluding that the opt-in plaintiffs in *Sloane* shared "no common thread." *Id.* at *8. But in this case, TransCanada is a client (not a staffing company), who dictates and controls its jobsites and determines what work is needed on a project. *See* Dec. of Ted McDavitt, Ex. A [ECF No. 36–1] ¶ 3. If anything, Judge Brann's reasoning is indicative that this collective action against TransCanada is

22

more cohesive than previous suits against the third-party Suppliers it contracts with, such as GIFS.

TransCanada also argues that I should deny Plaintiff's Motion because Plaintiff and Opt-Ins are independent contractors, rather than employees, and therefore not covered by the FLSA. The court evaluates whether the plaintiffs are employees or independent contractors for purposes of FLSA based on six factors:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 304–05 (4th Cir. 2006) (citing *United States v. Silk*, 331 U.S. 704 (1947)). No single factor is dispositive. Instead, courts must "capture the economic realities of the relationship between the worker and the putative employer." *Id.* In *Schultz*, the Fourth Circuit distilled the test into one "ultimate question": "whether the [workers are], as a matter of economic reality, dependent on the business they served, or, conversely, whether they [are] in business for themselves." *Id.* at 305.

In this case, Defendant's arguments regarding employee status are premature. I have addressed this issue of employee versus independent contractor status at the notice stage of conditional class certification before, in *Westfall*, 2007 WL 486606, at *9. In that case, I found that the defendants' arguments regarding whether the

plaintiffs were independent contractors or employees were "more appropriate in the second stage of the similarly situated inquiry," after discovery. *Id.* I am aware that other district courts have suggested that collective actions involving the classification of workers as independent contractors are improper for conditional certification. *Id.* But at the first stage of analysis, Plaintiff has a low bar to meet. I recognize in this case, as I did in *Westfall*, that there is "potential for the future individual assessment of each proposed action member." *Id.* At the second stage, the party opposing certification may move to decertify the class on the bases of employee versus independent contractor status.

### 2. Notice

Having concluded that conditional certification is appropriate, the Court now turns to Plaintiff's request for court-facilitated notice to the opt-in class. Courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs" of the pendency of the collective action. *Hoffmann–La Roche, Inc.*, 493 U.S. at 169; *see also Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 147 (4th Cir. 1992). Courts also have "broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 372 (N.D.W. Va. 2012) (internal citation omitted). And courts can modify the definition of the proposed class accordingly. Plaintiff in this case submitted a proposed notice and opt-in consent form to be sent to the putative class. Ex. 10, Ex. 11, Ex. 12 [ECF No. 26]. Defendant objects to the notice form on several bases. *See* Def.'s Resp. [ECF No. 26] 18–19. The following issues remain in dispute: (1) the

24

description of the class; (2) the length of the opt-in period; (3) the method of communication by which the notice may be sent; and (4) the frequency of which the notice may be given to the same potential plaintiff. I will address each of these issues in turn.

### i.    Description of the class

Plaintiff requests the court authorize notice be sent to "[a]ll Inspectors employed by, or working on behalf of, TransCanada who were classified as independent contractors and paid a day rate with no overtime at any time in the past 3 years…." [ECF No. 26]. Defendant objects to the definition of the class and requests that the court limit the scope of the putative class to include only Inspectors who worked on the worksites in West Virginia. *See* Def.'s Resp. [ECF No. 36] 18. Having found that Plaintiff satisfied the lenient standard of making a "modest factual showing" that a nationwide class of plaintiffs exists, I further find that limiting the putative class solely to West Virginia worksites would be inappropriate. *See Deskins*, 2019 WL 3987759, at *2.

Moreover, Defendant objects to the timeframe of the putative class, arguing that the class be limited to a period of "two years preceding the Court's ruling on Plaintiff's Motion." Def.'s Resp. [ECF No. 36] 18–19. Defendant does not offer an explanation as to why two years is preferable or more reasonable than three years. And there is no reason apparent to the court as to why three years is a flawed timeframe.

25

Accordingly, Defendant's objections to the description of the class, as it relates to location and timeframe, are **OVERRULED**.

### ii.    Length of opt-in period

Plaintiff requests a 60-day notice period. [ECF No. 26]. Defendant objects, requesting that the notice period be limited to 45 days. [ECF No. 36]. "Courts in this circuit routinely find that an opt-in period between 30–60 days is appropriate." *Byard*, 287 F.R.D. at 373; *see also Yerby v. City of Richmond, Va.*, No. 3:19-cv-393, 2020 WL 602268, at *7 (E.D. Va. Feb. 7, 2020) (60 days); *Sellers v. Keller Unlimited LLC*, No. 2:17-2758-RMG, 2018 WL 4502183, at *3 (D.S.C. Sept. 26, 2018) (same). I find a 60-day notice period is reasonable under the circumstances of this case. Defendant's objection to the length of opt-in period is **OVERRULED**.

### iii.    Method of communication

Plaintiff requests the court order TransCanada to provide counsel with the names, current or last known physical addresses, email addresses (both personal and work, if available), and telephone numbers for the Day Rate Inspectors. [ECF No. 26]. Plaintiff further requests the court authorize counsel to send the approved notice to the putative class members via US. First Class Mail, email, and text message. [ECF No. 26–12]. Defendant objects to the production of email addresses and telephone numbers and to the use of email and text for notice. *See* [ECF No. 36]. "At the notice stage of FLSA actions, e-mail addresses are routinely disclosed." *Pecora v. Big M Casino, Inc.*, No. 4:18-CV-01422-RBH, 2019 WL 302592, at *5 (D.S.C. Jan. 23, 2019) (citing *McCoy v. RP, Inc.*, No. 2:14-CV-3171-PMD, 2015 WL 6157306, at *4 (D.S.C.

Oct. 19, 2015)). "[C]ommunication through email is [now] the norm." *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012). Email is a more reliable form of communication than paper mailing, given that mailing addresses tend to change more often than email addresses. However, production of telephone numbers generally requires the plaintiffs to demonstrate a "special need." *Pecora*, 2019 WL 302592, at *5. In this case, Plaintiff argues that requesting and using telephone numbers is specifically warranted here because putative class members regularly work in "remote locations that are far away from home for long periods of time, [and] will eat, sleep, and work at the jobsite." *See* Pl.'s Reply [ECF No. 41] 17; *see also* [ECF No. 26–4] ¶ 23. I agree with the Plaintiff and find that the production of telephone numbers is appropriate. Defendant's objection to the production and use of email addresses and telephone numbers for notice is **OVERRULED**.

### iv.   Frequency of notice

Plaintiff requests the court to authorize Plaintiff's counsel to send a second, identical copy of the Notice and Consent Form to putative class members 30 days from the mailing of the original forms. [ECF No. 26–12]. Defendant objects, requesting that the court limit Plaintiff to sending the approved notice to putative class members on only one occasion, "except in the case where notice is returned due to an incorrect address." [ECF No. 36]. I find a reminder notice in this case to be unnecessary and inappropriate, except where notice is returned as undeliverable. *See*

*Regan v. City of Charleston*, S.C., No. 2:13-CV-3046-PMD, 2014 WL 3530135, at *10 (D.S.C. July 16, 2014) (finding that a singular notice was "sufficient to advice putative plaintiffs of their right to opt-in to the lawsuit" and denying the plaintiffs' requests to send a reminder notice). Defendant's objection to the second notice is **SUSTAINED**.

>        **v.   Approved notice order**

In accordance with this Opinion, the Court will issue a separate Order containing, inter alia, instructions regarding the issuance of court-supervised notice.

## IV.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2)

Defendant moves to dismiss the out-of-state Opt-ins, arguing this court lacks personal jurisdiction over the Defendant on their claims. [ECF No. 34]. Plaintiff argues that the court should deny the Motion for two independent reasons. *See* Pl.'s Opposition [ECF No. 42]. One, because Defendant filed the Motion after the deadline set by the court. *Id.* And two, because even if considered, the Motion is unmeritorious. *Id.* The Order and Notice in this case explicitly sets the deadline to file "[m]otions under Fed. R. Civ. P. 12(b)" on January 28, 2020. [ECF No. 11]. Defendant filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(2) on March 19, 2020, well after the deadline set by this court. *See* [ECF No. 34]. Defendant argues that motions under Rule 12(b) are dispositive motions. Def.'s Reply [ECF No. 48]. Defendant points to the Scheduling Order, which sets the deadline to file dispositive motions on August 21, 2020. I do not agree with the Defendant's interpretation of the Scheduling Order and I find that the Motion is untimely. But nevertheless, I will decide the Motion on the merits. The Motion is **DENIED** for the reasons that follow.

### a. Legal standard

When a defendant challenges personal jurisdiction under Rule 12(b)(2) and the court considers the issue based on the complaint and supporting affidavits, "the plaintiff has the burden of making a prima facie showing" of jurisdiction. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). This burden of proof is by a preponderance of the evidence. *Mylan Labs. v. Akzo*, N.V., 2 F.3d 56, 60 (4th Cir. 1993). To meet this burden, the plaintiff must establish the jurisdictional facts through sworn affidavits or other competent evidence. *See Universal Leather, LLC*, 773 F.3d at 558. In conducting its analysis, "the district court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

A federal district court may exercise personal jurisdiction over a non-resident defendant only if doing so (1) is permitted by the long-arm statute of the forum state and (2) comports with federal due process. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)).

It is important to recognize at the outset that personal jurisdiction in a case in which subject matter jurisdiction is based on diversity jurisdiction (28 U.S.C. § 1332) is different than in a case in which it is based on federal question jurisdiction (28 U.S.C. § 1331). *See Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 743 F.2d 947, 950 (1st Cir. 1984) (…it must be understood that "minimum contacts" … for purposes

29

of personal jurisdiction is not a limitation imposed on the federal courts in a federal question case by due process concerns. The Constitution does not require the federal districts to follow state boundaries… The limitation is imposed by the Federal Rules of Civil Procedure."). "Rule 4(f) generally limits the service of process of federal district courts to the territorial limits of the state in which the court is held." *Id.* "Rule 4(e) allows for service outside the state when authorized by a statute of the United States or when a statute or rule of court of the state in which the district court is held provides for such service." *Id.* "It is the reference to the 'longarm' statutes of the various states that incorporates the requirement of minimum contacts as a precondition for extraterritorial service of process." *Id.* Where, as here, the federal statute is silent on the availability of nationwide service of process, such service is governed by the forum state's long-arm statute. *Waters v. Day & Zimmermann NPS, Inc.*, No. CV 19-11585-NMG, 2020 WL 2924031, at *2 (D. Mass. June 2, 2020); *see also* Fed. R. Civ. P. 4(k)(1)(A). Accordingly, in this case, I must conduct the same personal jurisdiction inquiry as in a diversity case under the West Virginia's long-arm statute.

The West Virginia long-arm statute is co-extensive with the full reach of due process. As such, the statutory inquiry merges with the due process inquiry. *See* West Virginia Code § 56-3-33; *Celotex Corp. v. Rapid Am. Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997). To determine jurisdiction in accord with due process, a federal district court must decide "whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and

substantial justice.'" *Dirs., First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

There are two ways to establish personal jurisdiction pursuant to the Constitution: (1) general jurisdiction and (2) specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court may assert general jurisdiction over a foreign corporation to hear all claims against them when "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (citing *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)).

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* Courts consider three factors when determining personal jurisdiction under this theory: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012). Specific jurisdiction is limited to adjudication of the issues that derive "from, or connected with, the very controversy that establishes jurisdiction." *Id.*

### b. Whether this court has personal jurisdiction over Defendant as it relates to claims made by opt-in out-of-state Plaintiffs

In this case, Defendant moves to dismiss the nonresident Opt-Ins' claims based on a lack of personal jurisdiction. There is no question that this Court does not have general personal jurisdiction over TransCanada. Absent extraordinary circumstances, neither present here nor alleged to be present here, a corporate entity is subject to general jurisdiction only in the states where it is formed and has its principal place of business. *Daimler*, 571 U.S. at 137. TransCanada is organized under the laws of the state of Delaware and has its principal place of business in Texas. Dec. of Ted McDavitt [ECF No. 34–1] ¶ 3. The only remaining question is whether specific personal jurisdiction exists over TransCanada as it relates to the out-of-state opt-in plaintiffs' claims.

The central question in deciding this Motion is whether the holding in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773 (2017) ("*BMS*") applies to a federal court's exercise of personal jurisdiction over a defendant regarding claims brought under a FLSA collective action. The Supreme Court explicitly left "open the question [of] whether the Fifth Amendment imposes the same restrictions of the exercise of personal jurisdiction by a federal court" as the Fourteenth Amendment does by a state court. *Id.* at 1784. Moreover, the Supreme Court did not decide how the holding in *BMS* regarding mass tort actions applies to class actions or FLSA collective actions. Neither the Fourth Circuit nor any other appellate court have addressed this question and lower courts across the country are split on the appropriate answer. *See e.g.*, *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *2 (N.D.W. Va. Dec. 4, 2019) (finding that *Bristol-*

*Myers* does not apply to FLSA collective actions and thus the court had personal jurisdiction over the claims); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F.Supp.3d 845 (N.D. Ohio 2018) (holding that "*Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of [out-of-state] plaintiffs" against out-of-state defendants).

In *BMS*, over 600 plaintiffs, most of whom were not California residents, sued Bristol-Myers Squibb Company ("Bristol-Myers") in California, asserting various state law claims based on injuries allegedly caused by a Bristol-Myers drug called Plavix. *Id.* at 1777–78. Bristol-Myers was not a California corporation. *Id.* Although resident plaintiffs who were prescribed, obtained, and ingested Plavix in California allegedly sustained the same injuries as the nonresidents, all of the conduct in that case giving rise to the nonresidents' claims occurred in different states. *Id.* Bristol-Myers challenged the California state court's jurisdiction to hear the claims made by the out-of-state plaintiffs. *Id.* at 1778. The Supreme Court held that California state court did not have specific personal jurisdiction over Bristol-Myers regarding claims made against it by the nonresident plaintiffs who did not suffer harm in California. *Id.* at 1783. In doing so, the Court required that personal jurisdiction over the defendant must be established for each *individual* plaintiff in a mass tort action. *Id.*

In accordance with many other district courts,[3] I find that the holding in *BMS* does not apply to FLSA collective actions. In *BMS*, the Supreme Court grounded its

---

[3] *See e.g.*, *Waters v. Day & Zimmermann NPS, Inc.*, No. CV 19-11585-NMG, 2020 WL 2924031, at *3 (D. Mass. June 2, 2020) (Gorton J.) (holding *BMS* does not apply to collective actions brought pursuant to the FLSA); *Warren v. MBI Energy Servs., Inc.*,

analysis at the level of "the suit," stating, "in order for a state court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *BMS*, 137 S. Ct. at 1780. "In the mass tort context, each individual plaintiff is a real party in interest and therefore a Court must have jurisdiction over each plaintiff." *Waters*, 2020 WL 2924031, at *4. "In contrast, in an FLSA collective action the suit is between the named plaintiff and the defendant." *Id.* In an FLSA collective action, the named plaintiff brings the suit on *behalf* of other employees who are "similarly situated." *See* 29 U.S.C. §216(b). The fact that "other members of a putative class in the FLSA action must opt-in does not change the dynamics of the

---

No. 19-CV-00800-RM-STV, 2020 WL 937420, at *6 (D. Colo. Feb. 25, 2020) (Varholak, M.J.) (same); *Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *3 (N.D.W. Va. Dec. 4, 2019) (Keeley J.) (same); *Mason v. Lumber Liquidators, Inc.*, No. 17-CV-4780, 2019 WL 3940846 at *7, (E.D.N.Y. Aug. 19, 2019) (Brodie, J.) (same); *Seiffert v. Qwest Corp.*, No. 18-cv-00070, 2018 WL 6590836, at *2–3 (Dec. 14, 2018) (Morris, J.) (same); *Garcia v. Peterson*, 319 F. Supp. 3d 863, 880 (S.D. Tex. 2018) (Miller J.) (same); *Hickman v. TL Transp.*, LLC, 317 F. Supp. 3d 890, 899 n.2 (E.D. Pa. 2018) (McHugh, J.) (same); *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 at *2 (N.D. Cal. Nov. 10, 2017) (Alsup, J.) (same). *But see Camp v. Bimbo Bakeries USA, Inc.*, No. 18-CV-378-SM, 2020 WL 1692532, at *4 (D.N.H. Apr. 7, 2020) (McAuliffe, J.) (holding that *BMS* applies to collective actions brought pursuant to the FLSA); *Pettenato v. Beacon Health Options, Inc.*, --- F.Supp.3d ---- , No. 19-cv-1646, 2019 WL 5587335,*6 (S.D.N.Y. Oct. 25, 2019) (Moses, M.J.) (same); *Chavira v. OS Restaurant Services*, LLC, No. 18-cv-10029-ADB, 2019 WL 4769101, at *4 (D. Mass. Sept. 30, 2019) (Burroughs, J) (same); *Turner v. UtiliQuest*, LLC, No. 3:18-cv-00294, 2019 WL 7461197 (M.D. Tenn. July 16, 2019) (Richardson, J.) (same); *Rafferty v. Denny's, Inc.*, No. 5:18-cv-2409, 2019 WL 2924998 at *7 (N.D. Ohio July 8, 2019) (Lioi, J.) (same); *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845, 851 (N.D. Ohio 2018) (Polster, J.) (same); *Roy v. FedEx Ground Package Sys.*, Inc., 353 F. Supp. 3d 43, 62 (D. Mass. 2018) (Robertson, M.J.) (same).

suit which remains between the plaintiff and defendant." *Id.*; *see also Hunt v. Interactive Med. Specialists, Inc.*, No. 1:19CV13, 2019 WL 6528594, at *3 (N.D.W. Va. Dec. 4, 2019) ("Accordingly, unlike the mass action in *Bristol-Myers Squibb*, the only suit before the Court does arise out of or relate to Defendant's contacts with the forum."). So long as the named plaintiff in an FLSA action was injured in the forum state by the defendant's conduct then the "suit" arises out of or relates to the defendant's contacts with the forum.

I also find that the Supreme Court's focus in *BMS* on concerns regarding federalism and state sovereignty support declining to extend its holding to FLSA actions. *See BMS*, 137 S. Ct. at 1780. The Court emphasized the fact that "a state court's assertion of jurisdiction exposes defendants to the State's coercive power." *Id.* at 1779 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). The Fourteenth Amendment's Due Process Clause serves the necessary function of limiting the power of the state court "to render a valid personal judgment against a nonresident defendant." *Id.* (citing *World–Wide Volkswagen Corp. v. Woodson*, 44 U.S. 268, 291 (1980)). Restrictions on personal jurisdiction then are not merely about avoiding "inconvenient or distant litigation." *Id.* at 1780. "They are [also] a consequence of territorial limitations on the power of respective States." *Id.* But "[w]hen a federal court adjudicates a federal question claim, it exercises the sovereign power of the United States and no federalism problem is presented." Wright & Miller, Personal Jurisdiction in Federal Question Cases, 4 Fed. Prac. & Proc. Civ. § 1068.1 (4th ed.). The anxiety surrounding federalism expressed in *BMS* is

inapplicable to a FLSA action, based on federal question jurisdiction and thus the constitutional limitations imposed by the Fifth Amendment.

Moreover, "[c]ourts which have declined to extend *BMS* often follow the reasoning first articulated by the Court in *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017)." *Waters*, 2020 WL 2924031, at *4. I too am persuaded by the reasoning in *Swamy*. In *Swamy*, the court held that extending *BMS* to the FLSA context would contravene the express intent of Congress. *Swamy*, 2020 WL 2924031, at *2. The court stated,

> Unlike the claims at issue in *Bristol-Myers*, we have before us a federal claim created by Congress specifically to address employment practices nationwide. See 29 U.S.C. 202, 207(a). Congress created a mechanism for employees to bring their claims on behalf of other employees who are "similarly situated," and in no way limited those claims to in-state plaintiffs. 29 U.S.C. 216(b). Thus, our circumstances are far different from those contemplated by the Supreme Court in *Bristol-Myers*.

*Id.* at *2. The court in *Swamy* further emphasized that applying *BMS* to the FLSA context "would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Id.* This result would gut the efficacy of the FLSA and defy its purpose of creating a vehicle for a national collective action against employers.

In holding that *BMS* does not apply to this case, I find that this court has personal jurisdiction over Defendant on claims made against it by the out-of-state Opt-ins. Here, there is no dispute that the original named Plaintiff Harbaum and

current named Plaintiff O'Quinn both worked for TransCanada in West Virginia and were allegedly harmed by TransCanda's conduct in West Virginia. *See* [ECF Nos. 1, 38]. The "suit" here thus arises from the Defendant's contacts in West Virginia. That fact is sufficient to establish personal jurisdiction over Defendant as it relates to the entire collective action. Defendant's Motion to Dismiss Non-Resident Opt-In Plaintiffs, [ECF No. 34], is **DENIED**.

## V.   Conclusion

Defendant's Motion to Compel Arbitration, [ECF No. 44], is **GRANTED in part** and **DENIED in part**. The Court further **ORDERS** pursuant to this finding that the claims of Opt-in Plaintiffs Craig Cypert, Chad Copley, Charles Copley, and Larry Krone be severed and stayed. Plaintiff's Motion for Conditional Certification of Class, [ECF No. 26], is **GRANTED**. As a result, the Court will issue a separate Order containing, inter alia, instructions regarding the issuance of court-supervised notice. Defendant's Motion to Dismiss, [ECF No. 34], is **DENIED**. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:   June 29, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE